IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 08-cv-00842-REB-KMT

KATHIE BACH,

    Plaintiff,
v.

HYATT CORPORATION, d/b/a Grand Hyatt Denver,

    Defendant,

and

HYATT CORPORATION, d/b/a Grand Hyatt Denver,

    Third Party Plaintiff,
v.

INTERSERV GROUP, INC.

    Third Party Defendant.

---

**ORDER**

---

This matter is before the court on "Defendant's Motion to Compel Production of Executed Release Authorizations" (hereinafter "Mot.") [Doc. No. 37, filed January 22, 2009]. "Plaintiff's Response in Opposition to Defendant's Motion to Compel Production of Executed Release Authorizations" was filed on February 11, 2009 (hereinafter "Rsp.") [Doc. No. 47]. "Defendant's Reply in Support of Motion to Compel Production of Executed Release

Authorizations" was filed on February 26, 2009 [Doc. No. 48]. The court heard oral argument on March 5, 2009.

The defendant in this case has requested the court to require the plaintiff to execute release authorizations allowing the defendant to obtain from third parties what it believes is discoverable medical, employment, Social Security, school, insurance, and workers' compensation records. Plaintiff objects to executing medical release authorizations, even if narrowly tailored, claiming the procedure is at odds with current Colorado state law. Plaintiff claims she has obtained all medical records herself and has produced to defendant either the records themselves or privilege logs which describe withheld documents in sufficient detail to allow the defendant to assert arguments based on waiver of the physician-patient privilege.

## I. *Background*

The Complaint alleges that on April 11, 2006, Plaintiff, while a guest at the Grand Hyatt Denver, fell inside the shower of her handicapped compatible guest room. She alleges a shower transfer bench pulled away from the wall, causing the her to fall to the floor and sustain multiple injuries. The Complaint alleges Plaintiff suffered injury to her buttocks, neck, back, pelvis, calf, groin and bilateral lower extremities, as well as suffered contusions, hypertension numbness and discomfort. (Compl., [Doc. No. 2], ¶¶ 21 and 46.) Eventually the plaintiff had lumbar fusion surgery on her back. She seeks non-economic damages for anxiety, stress, depression, mental and emotional pain, suffering and distress, loss of time, loss of enjoyment of life, physical impairment, and disfigurement. *Id.* Plaintiff also seeks damages for past and future economic losses including medical and rehabilitative expenses, past and future

lost wages, earning capacity, and out-of-pocket expenses. *Id.* According to her "Second Supplemental F.R.C.P. 26(a)(1) Disclosures" (Mot., Exhibit E), plaintiff alleges damages as "prior medical expenses in the amount of $100,595.70; future medical expenses, undetermined; lost wages, $7,906.10; loss of future earning capacity, undetermined; non-economic damages, to be determined; and impairment, to be determined." *Id.*

The parties do not dispute that Plaintiff has had previous medical issues involving neck pain, headaches, and a broken wrist associated with two previous claims for workers' compensation benefits made within the past four years, (Mot., Exhibit A), and she has received prescription medication, x-rays, traction treatment, follow up treatment, and chiropractic treatment for her neck, back, and headaches associated with a prior workers' compensation claim stemming from a 2005 car accident. (Mot., Exhibit B, deposition of plaintiff.) Plaintiff also has admitted to two additional previous injuries after slipping and falling while on crutches. *Id*. It is also uncontested that plaintiff has had cerebral palsy her entire life, which condition affected her lower extremities and required her at various times to use braces, crutches, and a wheelchair. *Id*.

Plaintiff's counsel stated during the hearing that he has requested and received voluminous medical records from plaintiff's many treating doctors and hospitals going back to at least 1983. (*See* i.e., Rsp., Exhibit 1, First Amended Privilege Log.) Counsel claims the medical records have been carefully reviewed and multiple privilege logs produced purporting to outline all the records and listing with particularity every document, by Exhibit Number and page number, which has been withheld from discovery as privileged. Although defense counsel at

oral argument stated there have been five privilege logs produced, the court has only been provided with the First Privilege Log and the Amended First Privilege Log.

## II. Legal Standards

The scope of evidence subject to discovery under the Federal Rules is broad:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial of the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P 26(b)(1). The party objecting to discovery must establish that the requested discovery does not fall under the scope of relevance as defined in Fed. R. Civ. P 26(b)(1). *Simpson v. University of Colo.*, 220 F.R.D. 354, 359 (D. Colo 2004).

In diversity jurisdiction cases, such as this one, state law controls issues of privilege raised by the parties. *Trammel v. United States*, 445 U.S. 40, 47 n.8 (1980). This court applies the substantive law of Colorado in analyzing the underlying claims as well, but applies federal law to procedural issues. *See Ahrens v. Ford Motor Co.*, 340 F.3d 1142, 1145 (10th Cir. 2003); *Wolfgang v. Mid-America Motorsports, Inc.*, 111 F.3d 1515, 1525 (10th Cir. 1997)( procedural rules and practices in a diversity case are governed by federal law); *Wheeler v. Koch Gathering Systems, Inc.*, 131 F.3d 898, 903 (10th Cir. 1997)(same).

As to the records for which the defendant seeks a medical release, Plaintiff correctly points out that these records are privileged under Colorado law. Colorado's physician-patient

4

privilege prevents a physician, surgeon, or registered nurse from being examined as a witness as to any information acquired in and necessary to treating a patient without the consent of the patient. Colo. Rev. Stat. § 13-90-107(1)(d). The statute mandates:

> [A] physician, surgeon, or registered professional nurse duly authorized to practice his [or her] profession pursuant to the laws of this state or any other state shall not be examined without the consent of his [or her] patient as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient.

*Id*. The purpose of the privilege is "to encourage confidence and to preserve it inviolate." *Id.*

The Colorado physician-patient privilege is designed to protect the patient and the patient may waive such protections, thereby consenting to disclosure. *See, e.g., Alcon v. Spicer*, 113 P.3d 735, 739 (Colo. 2005). One way a party waives the physician-patient privilege is by injecting her "physical or mental condition into the case as the basis of a claim or an affirmative defense." *Clark v. Dist. Ct.*, 668 P.2d 3, 10 (Colo. 1983). This waiver does not amount to a general disclosure of the patient's entire medical history, however, but is limited to the cause and extent of the injuries and damages claimed. *See, e.g., Alcon*, 113 P.3d at 740; *Cardenas v. Jerath*, 180 P.3d 415, 423-424 (Colo. 2008).

### III. Analysis

#### A. Medical Records

What is disputed between the parties is not whether the privilege applies to plaintiff's medical records – it does – but what should be the procedure used to provide the defendants with the medical records for which the plaintiff has waived the privilege while at the same time protecting from disclosure those records for which the privilege has not been waived. *Alcon*,

5

113 P.3d at 739. The parties do not dispute that the plaintiff has waived her physician-patient privilege with respect to her medical treatment for her buttocks, neck, back, contusions, hypertension, pelvis, calf, groin, numbness and discomfort, and bilateral lower extremities since those are the medical conditions about which she makes claims directly in this case.

Medical records contain highly sensitive and private information that does not necessarily need to be disclosed to foster the effective functioning of the adversarial system. The rationale behind 'implied waiver' is that by initiating litigation, the plaintiff has already revealed some private medical conditions to the public so there is no need for the court to protect information about those conditions as a matter of the plaintiff's medical privacy. *See Clark*, 668 P.2d at 8. The danger, of course, in a limited waiver application of the privilege is that the patient may be concealing damaging pre-existing medical information, or other causes of the plaintiff's medical condition which may be hidden in undisclosed medical records over which she has sole control. For instance, the defendant herein has alleged that one treating physician provided a significantly greater number of records from Plaintiff's medical file pursuant to a deposition subpoena than the Plaintiff had provided for the same doctor.[1] Regardless of whether defendant's claims are valid, here lies the dilemma inherent in the application of Colorado's limited implied waiver with respect to medical records.

---

[1] The plaintiff disputes this allegation and explains that documents were included in the production from the doctor to the defendant which were not in the plaintiff's possession and which had come from another treating physician.

To help resolve the conflicts presented by this balancing of interests, Colorado has set forth a preferred procedure for the production of medical records, some of which might be subject to waiver and some of which might retain their privileged character. *See Alcon*, 113 P.3d at 742.

In the first instance, the plaintiff is responsible for obtaining and reviewing all the patient's medical records. *Id.* When that party wishes to assert a physician-patient privilege in response to a discovery request she must notify the party seeking disclosure by providing a privilege log identifying the documents withheld and explaining the privilege claim. *Id.* The *Alcon* court advised, "The documents must be described in the log with sufficient detail so that the opposing party and, if necessary, the trial court can assess the claim of privilege as to each withheld communication." *Id.*; Colo. R. Civ. P. 26(b)(5). If, after reviewing the privilege log, the party seeking discovery still contends the privilege does not apply and the parties cannot resolve the dispute informally, the seeking party can request that the trial court perform an *in camera* inspection of the challenged documents entered on the privilege log. *Id.*

The Colorado court based its rationale largely on the provisions of Fed. R. Civ. P. 26(b)(5) from which the Colorado Rule was been modeled. Whether or not the Colorado Rule was based on federal procedural rules, the directive of *Alcon* does not necessarily bind federal proceedings. In several recent decisions, the federal courts have declined to follow the *Alcon* model for production of medical records and instead have ordered that medical releases, narrowly tailored to release only non-privileged records, be executed by the plaintiff claiming personal injuries. *See, Bishelli v. State Farm Mutual Automobile Ins. Co.*, 2008 WL 1898406

(D. Colo. 2008) ("[w]hile a blanket release is improper, an appropriate release can be tailored to 'the cause and extent of the injuries which form the basis for a claim for relief.'"); *Pardick v. Barrow,* 2008 WL 2902623, *2 (D. Colo. 2008) (for all injuries plaintiff has sustained as a result of accidents both prior and subsequent to the subject accident, any claimed medical records involving the body parts that were injured during the subject accident, "plaintiff shall prepare a list of medical providers and their addresses, and shall execute a release for each such medical provider for any records pertaining to the evaluation and treatment of the injury.")

The court notes, however, that the plaintiffs in these two federal cases had produced no privilege log and had not attempted to acquire and separate medical records into privileged and non-privileged categories. Under the *Alcon* procedure, "[T]he party asserting the privilege must expend the bulk of the effort by compiling the privilege log." *Id*. at 742.

In this case, the Plaintiff has compiled medical records and, even though their completeness has been questioned, has attempted to comply with the privilege log directive of *Alcon.* I find, however, that the two privilege logs submitted to the court are inadequate with respect to the withheld documents in the medical records. In each instance, the plaintiff states as a reason to withhold the records, "Physician/Patient Privilege and not relevant" and cites *Alcon* and *Weil v. Dillon*, 109. P.3d 127 (Colo. 2005). This does not fully describe why the documents are not subject to waiver of the physician-patient privilege in this personal injury context. For instance, many of the documents are described by such generic phrases as "Well Woman Records." The court is puzzled over this term as must be the defendant. The court will construe this term, for purposes of this Order, as a medical "check up" without specific medical complaint

8

or condition. Using that definition, a "well woman" examination during which the plaintiff indicated a complaint of a sore back is most certainly a record wherein the privilege has been waived. However, a "well woman" eye examination is likely privileged. Further, in light of a complaint of "hypertension" as among the alleged injuries, the court cannot discern why "Blood Pressure Records" would not be records where waiver of the privilege applies. To exacerbate the situation further, while there is a representation of five separate privilege logs in this case, only two have been submitted for the court's review. (Mot., Exhibits C and F.) The information provided by the parties is not sufficient for this Court to determine the scope of an appropriate release under Colorado law nor to issue a ruling regarding the existence of a privilege waiver for many of the categories of documents on the privilege logs.

Therefore, I conclude that in this case, the request of the defendant to require the plaintiff to execute limited and tailored medical releases is both pragmatic and expeditious and fully permissible under federal procedure. However, since the plaintiff has attempted to acquire all the plaintiff's voluminous medical records, attempted to parse the medical records by privilege waiver and create substantial, if not entirely adequate, privilege logs, a better procedure – and one which is consistent with Fed. R. Civ. P. 26(b)(5) as well as the Colorado state procedure – is to require the production of a more thorough final privilege log from which the defendant can better make its individual objections to any privilege designation and from which the court could conceivably rule without absolute necessity of *in camera* review of each document.

Therefore, plaintiff is directed to undertake a new review of the medical records as outlined in this Order and to prepare a new and more detailed privilege log for documents where

the plaintiff continues to contend the Colorado state confidentiality statute has not been waived. This new privilege log, together with any records and documents which, upon further reflection, the plaintiff has decided to release, will be submitted to the defendant on or before March 23, 2009. The log must specifically indicate what the withheld records contain and why those particular records retain their privileged character in light of the extent of injuries suffered by the plaintiff allegedly caused by the transfer bench pulling away from the wall.

### B. Other Records

#### 1. Employment Records

The parties have represented that the plaintiff has worked for the same company for twelve years and that her entire personnel file from that employer has been produced.

The defendant has not shown good cause for any further past employment records. The Motion to Compel as to the past employment records releases is DENIED in part and GRANTED in part for post-accident employment records.

The plaintiff is directed to provide the defendant with complete employment records for any and every job plaintiff has held subsequent to the accident on or before March 23, 2009.

#### 2. School Records

The parties have represented that plaintiff's college transcripts have been produced and that her high school records have been requested and will be produced when received.

The defendant has not shown good cause for any further school records. The plaintiff is Ordered to produce the high school records when received as they were promised. The Motion to Compel as to other school records is DENIED.

### 3. *Social Security, Insurance and Workers' Compensation Records*

The Motion to Compel is GRANTED in part with respect to all Social Security, Insurance and Workers Compensation Records for a time period of ten years prior to the date of the alleged accident. The plaintiff will produce all records of each type of claim on or before March 23, 2009.

If the plaintiff does not produce all the records described in this Order, the Court will entertain an "emergency" Motion to Compel requesting medical or other releases as needed and will also consider sanctions against the non-producing party.

### V. *Conclusion*

The parties are **ORDERED** to produce a new medical privilege log and other documents consistent with this Order.

Each party herein shall bear its own attorneys fees and costs with respect to this motion.

Dated this 9th day of March, 2009.

                                **BY THE COURT:**

                                Kathleen M. Tafoya
                                United States Magistrate Judge